(No. 26489.—

DOUGLAS LUMBER Co. Appellee, *vs.* CHICAGO HOME FOR INCURABLES *et al.,* Appellants.

*Opinion filed May·13, 1942—Rehearing denied September 16, 1942.*

88

HAROLD J. FINDER, and ARCHIE SCHIMBERG, (FRANK-
LIN J. STRANSKY, of counsel,) for appellants.

KAGAN & TUROFF, for appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of
the court:

Plaintiff, Douglas Lumber Co., began this action in the
circuit court of Cook county to foreclose a mechanic's lien
for material furnished by it in construction and repair work
on a building located at 125-127 West Monroe street, Chi-
cago. The defendants are the Chicago Home for Incur-
ables, the owner of the premises, Down Town Auto Parking
Co., its lessee, Down Town Parking Stations, Inc., sublessee,
Edwin E. Hartrich, the contractor, and L. A. Gorman Co.
Inc., the subcontractor and the one to whom plaintiff fur-
nished the material in question. After the taking of a large
amount of evidence before the master, and the overruling of
exceptions to the master's report, a decree was entered in
favor of plaintiff. All the defendants except the subcon-
tractor, L. A. Gorman Co., Inc., have joined in this appeal.
A direct appeal to this court is supported by the claim that

section 21 of the Mechanic's Lien act as amended in 1913 (Ill. Rev. Stat. 1941, chap. 82, par. 21) is unconstitutional.

The facts are that early in 1938 the Down Town Auto Parking company entered into a written contract with Hartrich as general contractor to remodel a building then situated on the property and convert it from a bank building to a three-story reinforced concrete garage with a concrete ramp leading from the floor on the street level to the roof, thus permitting the parking of automobiles on three floors and the roof. The owner of the property gave its consent to the remodeling of the building. On March 22, 1938, the contractor, Hartrich, sublet the reinforced concrete work to L. A. Gorman Co., Inc., under a written contract. The regular contract and the subcontract contained similar provisions regarding monthly payments to be made on account of the contract price. They provided that there should be paid at the end of each period 85% of the value of the work in place as estimated by the architect.

Plaintiff sold building materials to the subcontractor, the Gorman company, consisting principally of crushed stone, sand, cement and lumber. The stone, sand and cement were used by the subcontractor in the concrete work and the lumber was used in the making of forms in the concrete construction.

The contention of defendants that plaintiff executed a release of lien necessitates a brief statement of the facts in reference to the circumstances surrounding the execution of two instruments, one dated July 30, 1938, the other September 1, 1938. The monthly requisition dated August 2, 1938, submitted by the Gorman company to Hartrich asked for the payment of $10,276.50 which was estimated to be 85% of the value of the work then completed. This requisition was accompanied by an instrument executed by plaintiff, which recited that the plaintiff "does hereby waive and release any and all lien or claim or right of lien on said

above building [125 West Monroe street] and premises under the Statutes of the State of Illinois relating to Mechanic's liens on account of labor or materials, or both, *furnished* by the undersigned to or on account of the said L. A. Gorman Company, for said building or premises." Contractor Hartrich submitted the Gorman company requisition, plaintiff's waiver of lien and his own monthly requisition to the owner for payment. The full amount of the Gorman company requisition was not paid by Hartrich to the company. August 6, Hartrich paid $7000 and on August 26, $1000, leaving $2276.50 of the Gorman company requisition unpaid. In turn the Gorman company failed to pay plaintiff in full for the materials delivered by it for the period ending July 30, 1938, being the period covered by the waiver of lien.

The second waiver of lien was executed and delivered under the following conditions. The requisition for monthly payment presented by Gorman on or about September 1, 1938, was $18,435. The master found, and the finding is supported by the evidence, that the plaintiff was unwilling to execute another waiver of lien for the reason it had not received the balance due July 30. It was delivered to the Gorman company on the express condition that it would not be delivered to Hartrich unless Hartrich paid the Gorman company the requisition in full. Louis A. Gorman, of the Gorman company, testified that when he delivered plaintiff's waiver to Hartrich he explained to him the condition of its delivery and told Hartrich he had not paid the plaintiff for the materials covered by the waiver, and that he would be unable to do so unless his requisition was paid in full and that if it was not paid in full, plaintiff's waiver should be returned to him as he had no authority to deliver it except that full payment be made. There was a controversy between the Gorman company and Hartrich as to the amount due on the second requisi-

tion. However, in the requisition which Hartrich submitted under his general contract he set forth the value of the work then performed by the Gorman company at substantially the same figure as that stated in the Gorman company requisition. The architect approved the Hartrich requisition without deduction and caused payment to be made on that basis. Instead of paying the $18,435 due on the Gorman company requisition, Hartrich paid $11,000. Louis A. Gorman testified that he refused the money and asked that plaintiff's waiver of lien be returned to him, that Hartrich told him the waiver had been delivered to the owner and could not be returned. The Gorman company then accepted the payment of $11,000. Hartrich denied any conversation in regard to the conditional delivery. The evidence discloses that Hartrich received $2790.52 on his requisition for work covered by the Gorman company in excess of the amount paid to the Gorman company for the same work. This amount was subsequently paid to the Gorman company and that company paid plaintiff $2000, which sum was less than the amount remaining due on the July 30 statement.

On December 6, 1938, plaintiff served notice of his claim for lien and within four months from the date on which the final payment became due, this action was instituted.

It was stipulated that the owners are indebted to Hartrich under his contract with them more than the amount of plaintiff's claim. There is no claim that the work was not completed according to contract or that the Gorman company work was not satisfactory.

After overruling exceptions to the master's report, a decree was entered in favor of plaintiff, as follows: (a) A judgment as at common law against L. A. Gorman Co., Inc., for $9027.59; (b) a prior lien upon the real estate involved for $3750.44 with interest at 5% from December 10, 1938, to the date of the master's report, October 5,

1940, a total of $4097.08, and ordered foreclosure of such lien; (c) a prior lien upon the money due Hartrich from the Chicago Home for Incurables and the Down Town Auto Parking company, or one of them, on Hartrich's contract in the sum of $7144.85, with interest from December 10, 1938, to the date of report, a total of $7794.83. The decree contains a finding that there is due Hartrich, but still held by the owners, more than sufficient to pay plaintiff's claim. This judgment was ordered to be satisfied *pro tanto* to the extent and in the amount plaintiff received on the foreclosure of the lien on the real estate.

The evidence shows that the lumber the plaintiff furnished the Gorman company was used by that company in the making of forms for concrete work and the foreclosure of the lien as to such material has been under section 21 of the Mechanic's Lien act as amended in 1913. Following the decision of this court in *Rittenhouse & Embree Co.* v. *Brown & Co.* 254 Ill. 549, which held that material furnished for form work in concrete construction was not lienable under the Mechanic's Lien act, the legislature in 1913 amended section 1. As amended it provides for a lien for materials furnished for "forms or form work used in the process of construction where concrete, cement, or like material is used." At the same time the legislature amended section 21, which provides for a lien for materials furnished a subcontractor, so as to include the furnishing of any material to a subcontractor which was "to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed form or form work where concrete, cement or like material is used in whole or in part."

The defendants contend that the above quotation from section 21 of the amended act of 1913 is unconstitutional, in that (a) it is vague and uncertain, (b) that it is discriminatory, and (c) violates the due-process clause of the constitution, section 2, article II. It is said that the part

of the act added by the amendment is so vague, indefinite and uncertain in reference to the kinds of material for which a lien is given that the act is invalid and inoperative. It is said that under the amendatory act the kinds of material that may be employed as a means for assisting in the construction of concrete work are theoretically infinite in number and to illustrate the point defendants argue that materials employed to cover a concrete structure to keep it from freezing or materials employed in a temporary superstructure to protect concrete work from the weather, or metal carts used for transporting concrete, might all be lienable under the act. Such argument ignores the plain wording of the amendment. Only one construction can be given to the language of the amendment and that is that the legislature intended to provide a lien for materials employed in what is commonly termed form or form work when used as a means for assisting in the construction of cement work. This is the plain and literal significance of the phrase and is the meaning that is given such terms by those engaged in such construction work. To hold otherwise would put a strained construction on the words and is to ignore the words "in what is commonly termed form or form work." The words used can not be construed to make lienable every item of material that might be used in the construction of concrete work for the plain intendment of the legislature was to restrict the provisions of the act to material used in what is commonly termed form or form work. The kind of material used in the forms or form work is a matter of proof and can be definitely established.

Defendants' contentions that section 21 as amended permits an unjust discrimination and violates the due process clause of the constitution are based on an erroneous construction of the statute. It is urged that section 21 provides liens for two classes of materialmen, namely: those who furnished material to a subcontractor to be used in the

construction of the building and those who furnish material to a subcontractor to be used in form work for concrete construction. As a basis for the claim that there is unjust discrimination when the statute is so construed, defendants say that to establish a lien of the first class it is incumbent on the claimant to prove that there was a contractor who had a valid contract with the owner and who could, under its terms, establish a lien, while a claim for lien of the latter class may be established by merely showing that the material furnished was used in the process of construction as a means for assisting in the erection of the improvement in what is commonly termed forms or form work for concrete construction.

The principles of law involved under such a construction are well established. The right of a lien under the statute arises out of contract, express or implied, between the owner of the premises to be charged with the lien, or one whom such owner has authorized or knowingly permitted to improve the same, and a contractor for the improvement. The statute creates the lien if there is a contract to support it. (*VonPlaten* v. *Winterbotham,* 203 Ill. 198.) The right of a subcontractor to a lien is dependent upon the contract between the owner and the contractor. If there is no contract between the owner and the contractor under the terms of which a lien may be established, then the person furnishing material to a subcontractor can not establish a lien for such material. *Kelly* v. *Johnson,* 251 Ill. 135.

If section 21 was to be construed as contended for by defendants, then the way would be open for a contractor who had no right of lien under his contract to have the work done by a subcontractor who could establish the lien against the owner's consent. In the *VonPlaten case, supra,* it was said: "Where the contract with the owner is sufficient to create a lien, it might well be implied that the owner, through the agency of the contractor, assents to

the subcontractors' liens by the employment of labor and procuring material to carry out the contract, but if the contract with the owner is inconsistent with the existence of a lien, the creation of a subcontractor's lien could rest on no such assumption. No reason is apparent why subcontractors should be permitted to establish secret liens against property not authorized under the original contract or in violation of its terms. The requirement is that the material shall be furnished or the labor performed in pursuance of the purposes of the original contract."

It is evident by the amendments of sections 1 and 21 in 1913, the legislature intended to bring within the operation of the act the furnishing of material which was to be used in the making of forms or form work for concrete construction. It intended to make lienable an item which had been omitted from the prior act (*Rittenhouse & Embree Co.* v. *Brown & Co. supra*) and which common experience showed to be a considerable item in all modern construction work. The amendment of section 1 dealt with forms and form work for concrete construction where the liens of contractors were involved and at the same time and in the same particular, section 21, which pertained to liens of subcontractors, was amended to include the furnishing of material for such work. The effect of the amendment to section 21 was to bring the furnishing of material for forms or form work for concrete construction into the same category as labor and other materials furnished under conditions which established the right to a lien under section 21. To adopt defendants' construction of section 21 is to ignore the legislative intent and to give to the words employed in the amendatory act a distorted construction. Under the construction adopted, defendants' constitutional objections are without merit.

Plaintiff alleged that at the time the notice of lien was served there was due the general contractor from the owner a sum in excess of plaintiff's claim and that there was like-

wise due from the general contractor to the Gorman company as subcontractor a sum in excess of plaintiff's claim. The prayer asked for a lien upon funds due or to become due to the subcontractor from the general contractor and upon funds due or to become due the general contractor from the owner. The defendants contend that these allegations were not proven and say there was no money due from the contractor to the Gorman company for the reason that the subcontract between the contractor and the Gorman company was illegal and void. The basis for such contention is that L. A. Gorman Co., Inc., was not licensed as a mason contractor as required by an ordinance of the city of Chicago. The ordinance provided that any person, firm or corporation engaged in or desiring to engage in or work at the business of masonry or mason work, either as contractor, subcontractor or employing mason in the city of Chicago should submit to an examination and obtain a license as a mason contractor or employing mason in the manner provided, which, among other things, required the taking of an examination and the payment of an initial fee of $100 and an annual renewal fee of $25. The ordinance also provided that all masonry or mason work (which included cement work) performed on or in connection with any building or structure in the city of Chicago, should be done in accordance with the ordinances regulating materials, construction, alteration and inspection or work, and that no masonry or mason work should be done or placed in or upon, or in connection with any building or structure without a permit being first issued therefor by the department charged with the enforcement of such ordinance. The penalty fixed for those who failed to procure a license was a fine of not less than $5 nor more than $50 for each offense. Neither Louis A. Gorman, president, nor L. A. Gorman Co., Inc., procured a license for the year 1938, although they had been licensed several years before. However, the company complied with the part of the ordinance

which required the obtaining of a permit to do the work it was to perform under its subcontract.

It will be noted that this ordinance does not by express words prohibit an unlicensed · mason from engaging in mason work or entering into a contract to do such work. It provides a penalty for failure to obtain a license but that is a matter between the mason and the city. This case is distinguishable from cases such as *Douthart* v. *Congdon*, 197 Ill. 349, where the ordinance prohibited anyone engaging in brokerage business without a license. There is nothing in the ordinance in question indicating a legislative intent to declare unlawful any contract for mason work which an unlicensed mason had made. There is the further significant fact to be considered that the Gorman company had procured a construction permit as required by this ordinance to do the work for which plaintiff furnished the material. This is some evidence of the construction the city placed upon its own ordinance, for it would be assumed that it would not issue a permit to do construction work when the holder of such permit was prohibited from doing it.

It was alleged in the complaint that plaintiff had furnished material which was used in the construction of the improvement and became an integral part thereof. The proof showed that the crushed stone, sand and cement furnished by plaintiff was so used but the lumber furnished was used in the making of form work for the concrete construction and, after it had served its purpose of holding the concrete in shape, was removed. Defendants claim this is a fatal variance between the pleading and proof. The decree from which the appeal was taken recognized such objection and granted plaintiff leave to amend its complaint to meet the evidence. Under section 46 of the Civil Practice act, (Ill. Rev. Stat. 1941, chap. 110, par. 170,) this was proper.

Defendants further contend such amendment introduced a new item of material into the case for the first time and

that it was barred by the time limitation of the Lien act. Section 46 permits an amendment at any time before judgment with respect to any matter either of form or substance which may enable the plaintiff to sustain the claim intended to be brought. It further provides that the cause of action shall not be barred by lapse of time under any statute prescribing or limiting the time for suit, if the original pleading was filed in apt time and if the cause of action asserted in the amendment grew out of the same transaction or occurrence originally set forth. The amendment relates back to the date of the filing of the original pleading. It is clear the facts in this case are within the provision of the statute. The contention is without merit.

The defendants assign as error the admission in evidence of certain records of plaintiff and delivery receipts signed by the various employees of the Gorman company. They claim this evidence was incompetent as against them to prove material delivery under paragraph 7 of the complaint. Plaintiff proved the facts of sale and delivery to the subcontractor by oral testimony and the introduction of its books of account consisting of ledger sheets, credit memoranda and a large number of delivery receipts. The delivery receipts covered the items of material sold and were signed by the employees or representatives of the Gorman company. In addition plaintiff introduced evidence of the persons signing the receipts, who testified that the material included in the receipts was delivered. Plaintiff proved that the charge sheets introduced in evidence were made as the first permanent record of the sale and its employees testified that they made the draft sheets at or about the time of each transaction. Plaintiff further proved that the charge sheets were correctly posted to the ledger sheets and a record made of each sale. The admission of this evidence was proper.

Defendants further contend that the lumber sold by the plaintiff is not lienable because (1) only a portion of

it was used in the construction of form work and (2) because even the lumber admittedly used for form work was not completely consumed in the course of the work but was afterwards removed from the premises. The evidence in the record sustains the conclusion and finding of the master that all of the lumber for which plaintiff claims a lien was used in the construction of form work. The lumber so used was cut to the particular size and shape necessary to meet the requirements for the making of the form work and was damaged by the cutting, water, wet cement and breakage. Regardless of the salvage value, this lumber was subject to a lien under the statute. The act does not make it a condition of lienability that the material used in the construction of form work be left on the premises or be consumed in its entirety. The only condition is that it be used for form work in the concrete construction.

The waivers of liens executed by plaintiff in August and September, 1938, waived the liens on the real estate but now defendants contend that they should be construed as being a release of plaintiff's liens on funds due from the owner to the contractor and from the contractor to the Gorman company. The waivers of liens will not bear such construction. By their express terms they are limited to the lien that might have been established against the real estate. Section 21 of the Lien act provides that every subcontractor shall have a lien "from the same time, on the same property as provided for the contractor, * * * and on the moneys or other considerations due or to become due from the owner under the original contract." It is obvious that the subcontractor under this section has a lien on the money due from the owner to the general contractor as well as a lien on the real estate. (*North Side Sash and Door Co.* v. *Goldstein,* 286 Ill. 209.) The waivers delivered by plaintiff were limited to the real estate and the decree gives them that effect.

Defendants contend that the decree is not supported by the evidence. The evidence is voluminous and it would unduly extend this opinion to relate the conflicting evidence as to each contested item. We have examined the same and find that it amply supports the finding of fact made by the master. It was the master's province in the first instance to determine the facts. He saw the witnesses and heard the testimony and while his finding of facts does not carry the same weight as the verdict of a jury, nor of a chancellor where the witnesses have testified before him, yet they are entitled to due weight on review. (*Keuper* v. *Heirs of Mette,* 239 Ill. 586.) The master's conclusions have been approved by the chancellor. Under such circumstances we are not justified in disturbing those findings unless they are manifestly against the weight of the evidence. (*Pasedach* v. *Auw,* 364 Ill. 491; *North Side Sash and Door Company* v. *Hecht,* 295 id. 515; *Klekamp* v. *Klekamp,* 275 id. 98.) The findings of fact as made by the master and approved by the chancellor will not be disturbed.

The defendants contend that the master in chancery is not entitled to an allowance of $914.75, which was allowed to him by the chancellor after a hearing of evidence, for the reason that the master was delinquent in the performance of his duties and because his rulings were tinged with favoritism to the plaintiff and showed prejudice against the defendants. There is no proof to sustain any part of such contention. The master gave both parties ample opportunity to introduce evidence and there is nothing to indicate the hearings were not conducted in a fair and impartial manner.

The decree of the circuit court is affirmed.

*Decree affirmed.*