Pascal P. Paddock, Inc., a Corporation, Plaintiff-Appellee, v. Robert E. Glennon, Martha L. Glennon and Bement Holiday Swim Club, Inc., a Corporation, Defendants-Appellants.

Gen. No. 10,469.

Third District.

January 9, 1964.

Rehearing denied March 2, 1964.

Monroe & McGaughey, of Decatur, for appellants.

Greanias & Owen, of Decatur, for appellee.

CARROLL, PRESIDING JUSTICE.

Defendants have appealed from a decree entered against them in a Mechanic's Lien foreclosure proceeding brought by plaintiff.

Defendants, Robert and Martha Glennon, husband and wife, own certain real estate leased to Bement Holiday Swim Club, a Corporation, of which Robert

was president. Plaintiff and defendant corporation entered into a contract for the construction of a swimming pool and bathhouse on the Glennon property. The price stipulated in the contract was $71,443.60, which included a number of nonlienable items. Payments amounting to $11,125 were paid to the contractor, leaving an unpaid balance of $60,760, which amount the court found due the plaintiff.

The principal ground upon which defendants base their appeal is that the major portion of the construction work undertaken by plaintiff consisted of plumbing which was performed by persons who were not licensed plumbers contrary to the Illinois Plumbers License Law; and that there can be no recovery for work done by such nonlicensed plumbers.

Section 116.38 of the Plumbing License Law (c 111½ Ill Rev Stats 1959) provides in part as follows:

> "Sec. 3. (1) All planning and designing of plumbing systems and all plumbing shall be performed only by plumbers licensed pursuant to the provisions of this Act hereinafter called "licensed plumbers" . . .

The public policy underlying the enactment of the Plumbing License Law is stated in section 116.36 thereof in this language:

> "Consistent with its duty to safeguard the health of the people of this State, the General Assembly therefore declares that individuals who plan, install, alter, extend, repair and maintain plumbing systems should be individuals of proved skill. To insure such skill and thereby protect the public health, this Act is declared to be essential to the public interest."

Section 116.63 of the Act provides penalties by way of fine or imprisonment for violation of any provision

363

of the Act. It is also recited in said section that it is a public nuisance for any person to perform the work of plumbing without having in effect the license required by said Act.

The record here discloses that James Cotner, who was assistant secretary-treasurer of the plaintiff corporation, was a licensed plumber; that construction of the pool started April 25, 1961, and was completed about July 15, 1961; that while the pool was under construction, Cotner visited the site no more than four or five times; that all of the work on the pool was done by persons who were not licensed plumbers. It appears to be clear that aside from the infrequent visits of Cotner to the construction site, no licensed plumbers were present on the construction site, nor participated in any of the plumbing work done on the pool.

██ Although in some situations the courts of this state have held noncompliance with licensing laws not to be a bar to a contractor's right to recover, the general rule is that where the statute prohibits an unlicensed person from engaging in certain work, the statute is held to be regulatory and enacted under the police power of the state rather than a revenue measure, and a contract by an unlicensed person to do such work is void and unenforceable. In Wright v. Baird, 249 Ill App 90, an unlicensed plumbing firm sought to recover for labor and materials furnished under a contract with a landowner. It was there contended that because the Plumbing License Act did not provide that contracts in violation thereof were void, the Act was merely a revenue measure and did not affect the enforceability of contracts. This court rejected such an argument, and had this to say:

"Appellant contends that appellees cannot recover for any work done or material furnished in the

364

line of plumbing without having complied with the act of the general assembly regulating plumbers, passed June 29, 1917, and that is one of the principal questions in the case. Appellees contend that the act is a measure merely to procure revenue and in no manner affects the validity of the contract expressed or implied. The title of the act (Cahill's St ch 109a) is: 'An Act to provide for the licensing of plumbers, and to provide for the supervision and inspection of plumbing and providing penalties for the violation thereof.' The act provides: 'Any person now or hereafter engaging in or working at the business of plumbing . . . shall first receive a certificate thereof in accordance with the provisions of this Act.' Section two, Cahill's St ch 109a, Paragraph 2, provides: 'Any person desiring to engage in or work at the business of plumbing either as a master plumber or employing plumber or as a journeyman plumber, shall make application to a board of examiners . . . and be compelled to pass such examination as to his qualifications as said board with the approval of the Department of Registration and Education may direct.' . . . The act further provides that any person violating any provision of the act shall be guilty of a misdemeanor and penalties are provided therefor.

"It seems plain from the reading of the statute that the measure is broader than a mere act to procure revenue, and that its purport is to conserve the health of the citizens of the State, passed under the police power of the State. . . .

"But it is contended by appellees that inasmuch as the act, in terms, does not declare contracts in violation of the act void, appellees may recover.

365

We are not in accord with this view. The nature of the certificate or license is fully defined in Wilkie v. City of Chicago, 188 Ill 444, 453: 'It is insisted that the term "certificate," used in the law, does not mean a license, and therefore the provisions are not inconsistent. The object of the act is to be stated in its title, and one of its purposes is there declared to be the "licensing" of plumbers. The certificate, by express terms, authorizes the recipient to engage in the business of plumbing. A certificate or paper having that effect is a license, which, in its general sense, is an authority to do something which without such authority is prohibited. Webster defines a license to be a formal permission from proper authorities to perform certain acts or carry on a certain business which without such permission would be illegal. The certificate is within that definition and is a license.'

"It has been held in Douthart v. Congdon, 197 Ill 349, 355: 'Where, by the terms of a statute or city ordinance, it is made illegal for a broker to exercise his business without a license, a broker cannot recover commissions for services rendered without such license.' In this case the court further said:

" 'The ordinance in the case at bar denounced as unlawful the prosecution of the business of a broker in grain without a license, and also provided for the infliction of a fine as a punishment or penalty for each transaction of a broker in violation of the ordinance. The particular transaction for which the sum of $31.25 was charged and included in these notes was an unlawful act, and subjected the said brokers to punishment by way of a fine. It was illegal, and entered into and

366

formed a part of the consideration for the promise contained in each of the notes. The rule has long been established that if any part of an entire consideration for a promise or any part of an entire promise be illegal the whole contract is void. . . .'

"It is the opinion of this court that appellees can recover nothing for work and services performed in the line of plumbing or doing plumbing work or while engaged in the business of plumbing under the proofs in this case, unless they have complied with the legislative act."

In Watkins Medical Co. v. Paul, 87 Ill App 278, the court considered the question whether a contract involving sale of drugs by a person not licensed under an Act regulating the practice of medicine in Illinois was enforceable. Holding the particular contract to be void, the court said:

"In the present statute there is a recurring penalty for each sale without a license, showing the object of the statute is to prevent the itinerant vending of drugs except under the license and control of the State Board of Health. We think it obvious that the purpose of the statute was not the collection of revenue, but to prevent the public from being injured in health and defrauded by itinerant sales of harmful drugs and nostrums. Therefore, under the above rules, this contract, by which the Medical Company sought to evade our statute, is impliedly prohibited, and is therefore void, and Wehmeyer is not liable to the Medical Company thereon, and as he is not liable his guarantors are not liable."

The act under consideration in the case at bar provides not only for a penalty for violation of its provi-

sions, but also declares work done by unlicensed plumbers to be a public nuisance. In our opinion there can be no doubt but that the plumbing law was enacted, as indicated by the declaration of policy found therein, for the purpose of protecting the public against the evil effects of improper plumbing.

It is significant to note that plaintiff's brief ignores the Wright decision and makes no attempt to distinguish it from the instant case. It is apparent from the record before us in this case that plaintiff introduced no evidence which would support the conclusion that the swimming pool plumbing was done by licensed plumbers. Cited in support of its theory that recovery can be had under the contract in this case regardless of the provisions of the Plumbing Law are Meissner v. Caravello, 4 Ill App2d 428, 124 NE2d 615, and Douglas Lumber Co. v. Home for Incurables, 380 Ill 87, 43 NE2d 535.

In Meissner it was contended that plaintiff's failure to obtain a building permit as required by ordinance before commencing construction of an improvement rendered illegal the contract under which work was done, and therefore barred plaintiff from enforcing its claim for a mechanic's lien. The ordinance provided only that no person should begin work where a permit was required until such permit had been obtained. It did not prohibit the doing of any particular work by unlicensed persons as does the Plumbing License Law. The Appellate Court observed that the contract did not provide for or require the violation of any law, and therefore was not an illegal contract and held failure to obtain a building permit did not preclude recovery for the work and materials furnished. In the case at bar, the contract in effect provided for the installation of plumbing in violation of the Plumbing License Law. The persons who did the actual plumbing work were by the Act prohibited from

368

performing such work. The fact that Cotner, an officer of plaintiff company, was a licensed plumber does not change the character of the contract.

In Douglas Lumber Co. the question presented was whether a material man furnishing material to a subcontractor who failed to obtain a license could enforce a lien. In holding that such absence of a license would not defeat plaintiff's lien the court said:

> "This case is distinguishable from cases such as Douthart v. Congdon, 197 Ill 349, where the ordinance prohibited anyone engaging in brokerage business without a license. There is nothing in the ordinance in question indicating a legislative intent to declare unlawful any contract for mason work which an unlicensed mason had made."

Clearly the decision in Douglas does not support plaintiff's case.

Adoption of plaintiff's theory would be tantamount to overruling this court's decision in Wright v. Baird. This we are unwilling to do for the reason that it would render meaningless the requirements of the Plumbing License Law, and lend judicial approval to the practice of negotiating contracts in violation of its provisions.

Upon a careful review of this record, we are convinced that the decree of the Circuit Court of Piatt County should be reversed.

Reversed.

REYNOLDS and ROETH, JJ., concur.