378

Marion Wanzer, Charles Lewis, Elisabeth Lewis, Thomas Raines, Nannie Raines, Renetta Schmitz, Unity School of Christianity, and Hazel Hurst Foundation for the Blind, Inc., Plaintiffs-Counterdefendants-Appellants, v. Smorgas-Brickan Developers, Inc., Thompson's Carpets, a Corporation, Acapco, Inc., a Corporation, Wilson Electric Co., a Corporation, S. J. Carlson & Sons, Inc., a Corporation, Commercial Refrigeration Co., a Corporation, Raymond Kooyer, P. H. Van Steenwyk, Lennart Dahlberg and Sun-Ray Fixture Mfg. Co., a Corporation, Defendants-Counterplaintiffs-Appellees.

Gen. No. 70–47.

Second District.

November 4, 1970.

Rehearing denied December 23, 1970.

Williams, McCarthy, Kinley and Rudy, of Rockford, for appellants.

Berry, Simmons & Coplan, Thomas & Thomas, and Welsh, Welsh, Holmstrom & Hyzer, of Rockford, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiffs sold real estate formerly occupied by the Bishop Cafeteria, in Rockford, Illinois, to Smorgas-Brickan Developers, Inc., under Agreement for Deed. Smorgas-Brickan, thereafter, contracted with various contractors to renovate the building. Smorgas-Brickan, soon after occupying the building as a cafeteria, found itself in financial difficulties and went into bankruptcy.

With this as the background, the plaintiffs (owners of the property), on December 8, 1967, filed suit to restrain each of the contractors, who took part in renovating the building, from removing property from plaintiff's building and for an accounting of all claims and for judgment against Smorgas-Brickan. The defendant-contractors each answered and filed counterclaims, asserting

mechanics' liens against the real estate owned by the plaintiffs.

The Circuit Court of Winnebago County, on October 31, 1969, entered a decree finding that the plaintiffs, by and through their agents and representatives, had knowledge of the improvements, alterations and modification contemplated by the defendant Smorgas-Brickan, and of the necessity therefor, and knowingly permitted the improvements involved in the lien claims of the defendants; that Smorgas-Brickan had become bankrupt and gone through bankruptcy in Federal Court and had forfeited all interest in and into the premises which it had contracted for; and ordered that the plaintiff's complaint be denied and granted liens against the premises for the work performed by the contractor-defendants.

The owners have appealed to this court on the basis that the original Agreement for Deed did not permit Smorgas-Brickan to authorize work which would result in mechanics' liens, and the owners did not consent or knowingly permit the work of the claimants to be done.

We first dispose of the issue of whether the contractors are bound by a provision in the original Agreement for Deed which stated that:

> "The buyer . . . 2. Shall not permit to be done upon said premises anything out of which a mechanic's lien could arise or attach thereto except with the previous written consent of sellers."

■ ■  The owners did not record the Agreement for Deed.  A provision in a lease of which third parties have no knowledge that a lessor's interest shall be exempt from mechanics' liens is void as against such third parties.  Friebele v. Schwartz, 164 Ill App 504, 507, 508; Boyer v. Keller, 258 Ill 106, 112, 101 NE 237; Love, Illinois Mechanics' Liens, 2nd edition, pages 94 and 95. As these contractors had no knowledge of the agreement provision, it is void as to them.

As to the owner's contention that they did not consent or knowingly permit the work of the claimants to be done, it is clear that if they did consent or knowingly permit the work of the claimants to be done, the land in question would be subject to the liens for work done,

under the provisions of chapter 82, section 1, entitled: "Person entitled to lien—Extent of lien," Ill Rev Stats 1967.

When the Agreement for Warranty Deed in question was entered into on March 15, 1967, the building was over 40 years old and had been used for 37 years by Bishop Cafeteria, the lessee. Also, at the time the Agreement for Deed was entered into, the owner of the premises had died and the new owners were all nonresident devisees. These devisee owners were represented by a Rockford Lawyer and a Chicago lawyer with regard to the legal matters pertaining to the sale, and by a Rockford realtor, a Mr. Levis, who had been manager of the building since 1961, and represented them in the sale. It does not appear that any of the devisees had ever seen the inherited premises. The Contract for Deed was negotiated by a Mr. Dahlberg, a realtor representing Smorgas-Brickan Developers, Inc., with Mr. Levis.

Mr. Levis testified that he has had 16 years of experience as a real-estate broker, and had managed the building up until April 1, 1967, when he was informed by the owners that his services as a manager were no longer needed. His office was located about half a block north of the building in question, and as managing agent, it was his responsibility to be familiar with this property. He also stated that Bishop Cafeteria, the former tenant, had only done minor upkeep work on the premises for many years.

Mr. Levis was first contacted by Smorgas-Brickan in December, 1966, and he was given a document setting forth the prospective lessee's requirements concerning renovating the building, but the lease was never signed. Instead, the sales contract was negotiated by Mr. Levis, representing the seller, and Mr. Dahlberg, representing Smorgas-Brickan. Mr. Levis testified that they had discussed, in general terms, the repairs to the interior that the purchaser intended to make after he took possession.

The seller's Chicago attorney expressed concern about the proposed sales contract, and Mr. Dahlberg furnished Mr. Levis with a letter from Sun-Ray Manufacturing Co. This letter quoted a figure of $85,000 which, supposedly, was to represent the sum total that Smorgas-

Brickan intended to spend to refurbish the interior of the building.

Mr. Levis also testified that he knew there would be refurbishing and renovating and work done which would be necessary in order for Smorgas-Brickan to open for business. Mr. Levis further stated that he knew Smorgas-Brickan was going to put the building back in good shape, but he did not inquire into what way or to what extent.

Mr. Levis wrote a letter to the sellers dated February 8, 1967, advising them of his concern with this vacant property and the necessity of an Agreement for Deed rather than an outright sale, because the buyer was under-capitalized. Improvements were also mentioned in this letter. Part of this letter is as follows:

> "The buyer's cash position what with the *required building restoration* that will be necessary, is limited and therefore the reason for the limited down payment and future monthly payments."

The seller's Chicago attorney also pointed out that the transaction presented a number of hazards. His letter to the Rockford attorney of the seller, of February 13, 1967, states in part:

> "I have no knowledge of the *conditions* of the area surrounding the building or of the building itself— Furthermore I believe the sellers should know more about the purchasers' ideas with regard to *renovation of the building,* for this is apparently the excuse for offering to sign a contract instead of an outright purchase."

The Chicago attorney also noted in his letter other undesirable features of the transaction and recommended that Mr. Levis continue to represent the seller after the Agreement had been signed. The advice to continue to retain Mr. Levis after the Agreement of Sale was only followed up to April 1, 1967, when Mr. Levis's agency was terminated.

Each of the mechanic lien claimants testified as to the shabby condition of the building and that Bishop

Cafeteria had removed all of its restaurant equipment and air-conditioning system.

Work was started by defendant lien claimants in April, 1967, and continued through September, 1967, with the new restaurant opening in October, 1967. Smorgas-Brickan closed and went into bankruptcy in December, 1967, and no lien claimant has received any payment. The trustee in bankruptcy had disclaimed the Agreement for Deed, and the owners reclaimed the building.

The defendant lien claimants, aside from testifying to the shabby condition of the building, point out that the floors were dangerous; that the tile ceiling, which was not fireproof, violated the City Code; that new air conditioning was needed; that heavier wiring was needed to comply with the code; and that, in effect, the building needed a complete restoration and refurbishing.

██ Although we have not detailed the voluminous evidence, we believe that the trial court correctly determined that the owners "knowingly permitted" the work to be done. Mr. Levis was the owner's agent up until April 1, 1967, and this is not disputed. His knowledge of the contemplated improvements is imputable to the owners. See Mutual Const. Co. v. Baker, 237 Ill App 596, 601; Johns-Manville Corp. of Delaware v. LaTour D'Argent Corp., 277 Ill App 503, 517. In Matot v. Barnheisel, 212 Ill App 489, 494, which is a case somewhat similar to this one, it was held that where the lessee had sublet his property and where a contractor was performing work on the property, that when the lessee testified he "supposed they were doing work in there, but I didn't know," the law will fasten upon him knowledge of that fact and subject the land to a lien. Furthermore, since the lien claimants have complied strictly to the statutory requirements to establish their lien, the mechanics' lien statute should be given a liberal construction so that justice will be done. Gunther v. O'Brien Bros. Const. Co., 293 Ill App 28, 34, 12 NE2d 23.

It appears that the defendant-contractors performed their contracts in good faith. It also appears that the owners did not choose to record the Agreement for Deed, which included the no-lien provision; failed to follow their

lawyer's advice, and discharged Mr. Levis, the managing agent as of April 1, 1967. Although they may not have done it intentionally, it would seem that these absentee owners made certain that they would be in ignorance of what was done to renovate and refurbish the building after April 1, 1967. Although many of the cases cited pertain to lessees contracting for improvements to be made upon property, the same law applies to a vendee under an Agreement for Deed. See Henderson v. Connelly, 23 Ill App 601, affirmed 123 Ill 98, 103, 14 NE 1; Paulsen v Manske, 126 Ill 72, 78, 18 NE 275.

■  As to the lien claim of S. J. Carlson & Sons, Inc., it appears that Carlson bought stock in Smorgas-Brickan Developers, Inc., after Carlson began plumbing work on the property involved herein. The owners claim that by doing so, Carlson is charged with notice of the conditions of the Agreement for Deed which Smorgas-Brickan entered into with the plaintiffs. The plaintiffs cite no cases, and without more than the mere fact that said stock was bought, does not make Carlson bound by the Agreement for Deed.

The plaintiffs further contend that the carpeting, furnished by the lien claimant Thompson's Carpets, does not fall within the scope of the Mechanics' Lien Act because it was considered personal property throughout the entire transaction, and thus is not a lienable fixture.

From the testimony elicited, it appears that the owner did have knowledge prior to the execution of the Agreement for Deed that Smorgas-Brickan intended to install new carpeting and that Mr. Levis had knowledge that they were going to install carpeting. Even if the owners did not have actual knowledge, the knowledge of Mr. Levis, the owner's agent, is binding on the owners. Johns-Manville Corp. of Delaware v. LaTour D'Argent Corp., 277 Ill App 503, 517. This knowledge is not based on the agent's authority but on his knowledge and his duty to communicate that knowledge to the owners. Mutual Const. Co. v. Baker, 237 Ill App 596, 601.

The condition of the floor was that it was in a state of disrepair, aged, torn and broken up in pieces. Ap-

parently asphalt tile, which had been put over the original ceramic tile, had been worn through in many places. Furthermore, it is revealed that the old floor was not usable because it would be impossible to match the existing tile for replacement.

Thompson installed rubber padding, which was glued to the existing floor, and the wall-to-wall carpeting was installed by drilling holes in the tile floor, attaching strips thereto, and then tacking the carpeting to the strips. The carpeting was cut to the dimension of the floors. This carpeting was subsequently sold at the bankruptcy sale, and it was cut into pieces in order to remove it. Both the owners and Thompson had notice of the bankruptcy sale, and neither objected. However, Thompson previously had properly filed its statement for a claim of mechanics' lien. Many factors must be considered in determining whether personal property remains personal property or becomes a fixture within the meaning of "fixture" as used in the Mechanics' Lien Act. In Owings v. Estes, 256 Ill 553, 555, 100 NE 205, the court stated:

"The sole question to be determined in this case is, are said cases, racks and hangers fixtures, and did the title thereto pass to the appellant, as real estate, at the master's sale? It is generally held that what is annexed to the land becomes a part of the land, but it is often said it is not always easy to determine what constitutes an annexation sufficient for such purpose. Mr. Justice Breese, in discussing that question in Arnold v. Crowder, 81 Ill 56, on page 58 said: 'Perhaps the true rule is that articles not otherwise attached to the land than by their own weight are not to be considered as part of the land unless the circumstances are such as to show that they were intended to be part of the land, the onus of showing they were so intended lying on those who assert that they have ceased to be chattels; and that, on the contrary, an article which is affixed to the land, even slightly, is to be considered as part of the land unless the circumstances are such as to show that the article was intended all along to continue a chattel,

the onus similarly lying on those who contend that it is a chattel.' "

Page 557:

"In the case at bar all of the articles sought to be removed from the building were attached, more or less securely, to the building, and they were all purchased or made for the particular use to which they were appropriated in the building and were specially adapted to that use, and it is clear, we think, that it was the intention of Jesse Estes, at the time he attached the cases, racks and hangers to his building, that they should permanently become a part of the building. Each of said articles was specially adapted to the use to which it was appropriated in the building."

■■ Under the factual situation present here, we cannot say that the trial court erred in holding, in effect, that the carpeting was a fixture under the Mechanics' Lien Act, and thus a mechanic's lien is attached to the property for the claim of Thompson Carpets. A reviewing court will not set aside the determination of a trial court unless the determination of the trial court is clearly and manifestly against the weight of the evidence or is based on obvious error. Linn Farms, Inc. v. Edlen, 111 Ill App2d 294, 300, 250 NE2d 681.

For the reasons hereinabove stated, the decree below is affirmed.

Decree affirmed.

MORAN and SEIDENFELD, JJ., concur.