# NICHOLAS WILHELM

## *v.*

# KASPAR G. SCHMIDT *et al.*

1. PAYMENT—*of its application.* Where a debtor, at the time of making a payment, fails to direct its application, the creditor may apply it as he pleases upon the different debts due him, and if the creditor does not make such application the court will make such appropriation as is reasonable and equitable.

2. Where neither the debtor nor creditor makes an application of a payment, the law will apply it first to that debt for which the security is most precarious.

3. SAME—*payment by note.* The mere acceptance, by a creditor, of a negotiable note of a third person, makes it but a collateral security, and when given for a pre-existing debt the presumption is that it was not the intention that it should operate as an immediate and absolute satisfaction and discharge of the debt, and nothing short of an actual agreement, or some evidence from which a positive inference of discharge can be made, will suffice to produce such effect.

4. COLLATERAL SECURITY—*effect on original debt.* It is the general rule that the acceptance of collateral security has no effect whatever on the legal rights and liabilities of the parties, as respects the original debt, either to impair or suspend the right of action thereon.

5. FORMER DECISIONS—*followed.* The decision in *Alden* v. *Goldie*, 82 Ill. 561, that a sale of property under a trust deed, at the door of the present court house in the city of Chicago, under a power to sell at the door of the court house since destroyed by fire, is authorized and proper, is approved and followed.

6. MARRIED WOMAN—*power to contract.* A note and mortgage given by a married woman, for a pre-existing debt of her husband, is void.

| 84 | 183 |
| 23a | 132 |
| 23a | 637 |
| 84 | 183 |
| 124 | 627 |
| 84 | 183 |
| 37a | 251 |
| 84 | 183 |
| 147 | 573 |
| 84 | 183 |
| 49a | 603 |
| 84 | 183 |
| 169 | 346 |
| 84 | 183 |
| 80a | 51 |
| 80a | 127 |
| 84 | 183 |
| 85a | 256 |
| 84 | 183 |
| d90a | 2 61 |
| 84 | 183 |
| 190 | 1108 |
| 84 | 183 |
| 107a | 2141 |
| 84 | 183 |
| 110a | 3449 |
| e110a | 3450 |

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. HARDING, NISSEN & BARNUM, for the appellant.

Messrs. LEAKE & VOCKE, for the appellees.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

Krewer and his wife, by warranty deed dated June 13, 1874, conveyed to Schmidt and Glade a part of lot 139, in Butterfield's addition to Chicago, subject to an incumbrance by way of trust deed, made by Krewer and wife September 7, 1870, to one Troost, as trustee, to secure the payment of Krewer's promissory note, of even date therewith, for $800, to Nicholas Wilhelm, payable two years after its date, with ten per cent per annum interest, payable annually.

Troost having, on the 22d day of September, 1874, advertised to sell the premises under the trust deed, for the satisfaction of the amount due on the note, Schmidt and Glade, on the 30th day of September, 1874, filed their bill in chancery to enjoin the sale, the bill setting up, that prior to the date of the conveyance from Krewer and wife to the complainants, Krewer had paid to Wilhelm $230 for interest accrued on the note, leaving but the sum of $890 due thereon, which sum had been tendered to Wilhelm and he refused to accept the same. The cause was heard upon pleadings and proofs, a decree passed in favor of the complainants, enjoining the sale, and this appeal was taken by defendant Wilhelm to reverse the decree.

Appellant admits the payment, by Krewer, of $227, but alleges it was on other indebtedness.

Krewer testifies, that in the summer of 1872, (he could not state whether it was in August or September,) he paid Wilhelm $200 on account of interest on the note, and afterward paid him $35.

Wilhelm admits the payment of that sum of $200, but tes-

tifies that it was on the 20th or 23d of October, 1872, and was on other indebtedness which Krewer was owing him at the time, and admits the payment, afterward, of $27 on such other indebtedness.

The lot had been sold on the 15th of May, 1871, at city tax sale, for non-payment of a city assessment, and one Forsyth held the tax sale certificate. Krewer wanted this taken up or to have the lot redeemed, but not having the money, he applied to Wilhelm to do it for him. Wilhelm borrowed the money for one year, at interest, $166, and paid it to Forsyth in redemption of the lot from the tax sale, on the 11th of July, 1871, taking Forsyth's receipt for it, and a surrender of the tax sale certificate. Wilhelm testifies that the $200 was paid on account of this tax matter, and that Krewer wanted the receipt, but he did not have the receipt with him at the time; that the matter rested until September 8th, 1873, as appears by the indorsement on the back of the Forsyth receipt which was surrendered up to Krewer, when this tax matter was finally settled between the parties. The city had paid back some $46 of the assessment, and the difference between that sum and the amount advanced by Wilhelm, with interest, amounting to some $117, was paid over to Wilhelm by Krewer, 8th September, 1873, nothing further being said by either about the $200. Wilhelm testifies that he had applied the money on $300 which he lent to Krewer on the 11th of February, 1871. There is no evidence as to the application of the $200 at the time it was paid, besides that of the parties. That is directly contradictory, the evidence of the one neutralizing that of the other.

It can not be said, then, to appear that the debtor, at the time of the payment, directed its application. If he did not, it would be left with the creditor to make the application as he pleased. But it may be equally said, that it does not here appear that the creditor, either, made the application. In which case, of neither debtor nor creditor applying the payment, the application devolves on the court, which will make such appropriation as is reasonable or equitable.

At the time of the payment of the $200, Wilhelm testifies that Krewer was indebted to him in three several sums, of $300 lent February 11, 1871; $50 advanced for payment of a sewer in September, 1870; and $50 advanced shortly afterward to pay for a pigeon-hole table, without any time of payment fixed for either.

The controversy in the case chiefly respects this sum of $300. Appellees contend that it was lent to the wife of Krewer, and not to Krewer himself. The circumstances were these:

Krewer's father had formerly owned the lot in question, while this son occupied the same, and had erected thereon a house in which he kept a saloon, and on which he had given a chattel mortgage before he (the son) acquired title to the land.

In February, 1871, the chattel mortgage on Krewer's house maturing, and Krewer failing to pay the amount thereby secured, the holder proceeded to foreclose the same by sale on the 11th of February, 1871. It does not appear that there were any bidders at the sale except Mrs. Krewer, who bid $300, and to whom the house was struck off for that price, but she had no money to make good her bid.

After waiting an hour or two the officer who had made the sale got impatient and was about to sell the house over again, when Wilhelm, who had been out and around making exertions to raise the money, returned, having borrowed it himself on his own credit; the money was then paid to the officer and he made a bill of sale of the house running to the wife of Krewer.

Without entering into the details of the testimony, we will say that, from the consideration of the whole evidence, taken all together, we have no doubt that Krewer himself, and not his wife, was the borrower of this money from Wilhelm—that the wife had no further real concern in the matter than passively to take the title in her name for the accommodation of her husband.

Wilhelm testifies that Krewer agreed to secure the payment

of this money by a mortgage on the lot, but afterward refused to do so, and the matter ran along until the 14th day of April, 1871, when, as all the security he could get, he took a chattel mortgage from Mrs. Krewer, on the house, for security of the payment of the money. The mortgage being given to secure a promissory note then executed by Mrs. Krewer for $450; it embracing this $300, the two other sums of $50 each, lent by Wilhelm to Krewer, and $50 to be advanced to him.

A question arises here, as to the effect of the taking of this note and mortgage from Mrs. Krewer; whether the effect would not be—allowing that the $300 was lent to Krewer, the husband—that there was here a substitution of one debtor for another, and a discharge or extinguishment of Krewer's debt, by means of making Mrs. Krewer the debtor in place of her husband. There is no positive testimony upon the subject, and nothing more than the mere transaction itself, from which to deduce any such consequence, excepting the testimony of Wilhelm, which does not appear to be contradicted, that the note and chattel mortgage were taken only as collateral security for Krewer's debt of $400, and to cover a promised future advance of $50 to be made to Krewer.

We recognize the rule to be, that the mere acceptance, by the creditor, of a negotiable note of a third person, makes it but collateral security; that when such note is given for a pre-existing debt, the presumption is, that it was not the intention of the parties that it should operate as an immediate and absolute satisfaction and discharge of the debt, and that nothing short of an actual agreement, or some evidence from which a positive inference of discharge can be made, will suffice to produce such effect; and that it is the general principle that the acceptance of collateral security has no effect whatever on the legal rights and liabilities of the parties, as respects the original debt, either to impair or suspend the right of action. See 1 Smith's Leading Cases, 330, in note to *Cumber* v. *Wane;* 2 American Leading Cases, 5th Ed. 263, *et seq.*, where the cases are collected and reviewed; *Tobey* v. *Barber,* 5 Johns. 68; *Jaffrey* v. *Cornish,* 10 N. H. 505; *Peter*

v. *Beverly*, 10 Pet. 532; *McIntyre* v. *Kennedy, Childs & Co.* 5 Casey, 448.

We come to the conclusion, then, that the facts disclosed by the record, do not show that the note, and mortgage on the house, given by Mrs. Krewer on the 14th of April, 1871, operated to discharge the pre-existing indebtedness of Krewer, her husband, to Wilhelm.

It appears, then, that at the times of the making of the payments by Krewer to Wilhelm, of $230 or $227, there was a subsisting indebtedness, otherwise than upon the $800 note in question, of Krewer to Wilhelm, of $400, payable on demand, for three several sums of money previously lent and advanced by Krewer to Wilhelm. It not satisfactorily appearing, from the evidence, that either the debtor or creditor made the application of the payment, how will the law apply it in accordance with its own notion of justice and equity? The house on which the chattel mortgage was executed by Mrs. Krewer, was destroyed by the fire of October, 1871, so that the security of that mortgage is valueless. The $400 indebtedness is then unsecured, further than by the mere note of Mrs. Krewer. It is held to be equitable to apply the payment first to that debt for which the security is most precarious. *Field* v. *Holland*, 6 Cranch, 8. In 1 American Leading Cases, may be found a full citation and review of the authorities upon the application of payments, and in view of them, it is there said, in the note of the annotators, that " the authorities are all but unanimous in establishing the principle, that the law will apply a payment to the debt which is least secured;" p. 350, 5th Ed. This court declared the same principle in the case of *Hare* v. *Stegall*, 60 Ill. 380. Indeed, in that case, the broader rule was recognized, that the law would make the application in the manner most advantageous to the creditor; and, although there are to be found exceptional cases to the contrary, it is believed that this is the general and predominant principle under the authorities.

We are of opinion, then, that these payments by Krewer should not be held to apply on the $800 note secured by the

trust deed, but that their application should be made upon the other unsecured indebtedness of $400 of Krewer to Wilhelm.

A question is made as to the right, under the power of sale, of the trustee to sell at the door of the present court house in Chicago, situate on the corner of La Salle and Adams streets. We have, at the present term, decided in favor of the right, in the case of *Alden* v. *Goldie*, 82 Ill. 581.

The decree is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed.*

Per CURIAM: Upon petition for a rehearing in this case, the point is made that the note and chattel mortgage given by Mrs. Krewer were not due at the time the payments were made, and that it is a rule, that where no application of a payment is made by the debtor, and one debt is not yet payable, but the other is already overdue, a general payment will be ascribed to the latter. 2 Greenlf. Ev. § 533. We deem it a sufficient reply to this, that the pre-existing debt of Krewer, the husband, on account of which we found this note and mortgage to have been given, was due at such time; and the note and mortgage being given by a married woman, were void, and may be treated as a nullity, and so as not standing in the way of a just and equitable application of the payments to that indebtedness of Krewer, in respect of which such note and chattel mortgage were given.

Perceiving no sufficient reason for a rehearing, it is denied.

Mr. JUSTICE DICKEY: In my judgment, the acceptance of the note and mortgage of a married woman, though the same was not obligatory on her, is, nevertheless, satisfactory proof that the day of payment agreed upon was that mentioned in the note. That debt not being due when the payments were made, such payments can not, properly, be applied to the debt not due.