(No. 19783.—

THE ILLINOIS REFINING COMPANY, Plaintiff in Error, *vs.* FRANK P. WELCH *et al.* Defendants in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 4, 1930.*

CONNELLY, WELD, WALKER & SEARLE, and A. B. HON-NOLD, (H. A. WELD, of counsel,) for plaintiff in error.

R. W. OLMSTED, for defendants in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, the Illinois Refining Company, filed its bill in the circuit court of Rock Island county against Frank P. Welch, R. H. H. Luckenbill, the General American Tank Car Corporation, the Illinois Oil Company and the Kawfield Oil Company to enjoin the sale of thirty-two tank cars belonging to the plaintiff in error which were in the possession of the Illinois Oil Company. The grounds for the action were, that there was no consideration for the

notes executed by plaintiff in error as the basis of a certain contract or mortgage and because the contract or mortgage was a fraud. The cars were sold notwithstanding the filing of the bill and the General American Tank Car Corporation purchased them for $32,075. After the sale the bill was amended by setting up that the sale was invalid and the notes and contract were neither lawfully executed nor ratified, and praying that the sale be set aside and the unpaid notes be surrendered and canceled. The cause was referred to a master to take the evidence and report his conclusions. He found that plaintiff in error was entitled to the relief as prayed in its bill. A decree was entered in favor of plaintiff in error and an appeal was prosecuted to the Appellate Court for the Second District, where the decree was reversed and the cause remanded, with directions to dismiss the bill. The cause comes to this court upon a writ of *certiorari.*

Plaintiff in error insists that the sale should be set aside because it was made in violation of paragraph 27 of chapter 95 of the statute; (Smith's Stat. 1929, p. 1942;) that both the Illinois Refining Company and the Kawfield Oil Company, the mortgagors, resided at Rock Island, Illinois, where the sale should have been made, as provided by the statute; that the sale took place at Granville, Putnam county, Illinois, where none of the cars were located when the mortgage was made, and that the sale was not made as provided in articles 4 and 5 of the contract of leasing. Defendants in error insist that paragraph 27 of chapter 95 has no application to the facts here presented, that the statute is not broad enough to cover these facts, therefore there was no statutory violation, and that this was a contract in interstate commerce and the statute has no application.

The evidence shows that these three oil companies were Illinois corporations and the place of residence of each was Rock Island. The principal place of business of the Illinois Refining Company and the Kawfield Oil Company was Cushing, Oklahoma, and they were engaged in oil produc-

tion. The Illinois Oil Company was engaged in buying
and selling oil and its principal place of business was at
Rock Island. Frank P. Welch owned practically the same
percentage of capital stock of each company. On Decem-
ber 1, 1923, the directors of the Illinois Refining Company
were Frank P. Welch, C. E. Welch, J. W. Armstrong,
John M. Harvey and J. M. Welch. The first three were
also directors of the Illinois Oil Company, which had nine
directors. The directors of the Kawfield Oil Company
were Frank P. Welch, M. W. Bottles and John M. Har-
vey. Frank P. Welch was president and general manager
of the Illinois Oil Company and treasurer of the Illinois
Refining Company. C. E. Welch was president of the Illi-
nois Refining Company and J. W. Armstrong was its sec-
retary. John M. Harvey was president of the Kawfield Oil
Company and M. W. Bottles was its secretary.

On December 1, 1923, the Illinois Refining Company
was the owner of thirty-two steel tank cars, subject to a
small undivided interest claimed by the Kawfield Oil Com-
pany. About December 1, 1923, a document called a "con-
tract of leasing" was prepared under the direction of Frank
P. Welch. It was executed by Luckenbill as lessor and by
the Illinois Refining Company and the Kawfield Oil Com-
pany as lessees to secure an issue of thirty-two first lien
car-equipment trust notes, each for $1000, the first to mature
June 1, 1924, and two maturing each six months thereafter.
On the date this contract was executed none of these cars
were in Putnam county, Illinois, and the refining company
was insolvent. Welch, after making several unsuccessful
attempts to raise money for the refining company by mort-
gaging or selling these tank cars, agreed to take a mortgage
on them for $32,000. In November, 1923, the refining
company drew on Welch for $12,000 in anticipation of the
completion of these mortgage negotiations. The negotia-
tions were finally completed, and upon the delivery of
thirty-two notes the $32,000 was distributed in payment

of the debts of the refining company, the principal part of which had been secured, paid or guaranteed by Welch. It is not claimed that any of these debts were not legitimate or that they were not incurred in good faith. On December 27, 1923, a joint meeting of the board of directors of the Illinois Refining Company and the Kawfield Oil Company was held in Cushing, Oklahoma, and the action of the officers of the refining company in negotiating the loan of $32,000 on December 1, 1923, was ratified. Prior to December 1, 1923, these cars had been leased to the Illinois Oil Company and they continued in the possession of that company until March 15, 1926. They were marked with the letters I. O. C. X., meaning privately owned cars of the Illinois Oil Company. In March, 1926, the stockholders of the Illinois Refining Company elected new directors and did not re-elect Welch. On April 17, 1926, Welch sent a notice to Luckenbill to the effect that he was the owner of $28,000 of the notes, the others having been paid; that the makers were in default and had not paid $2000 due June 1, 1925, $2000 due December 1, 1925, and $1500 of interest due March 20, 1926. Welch demanded that Luckenbill, as trustee, declare all of the notes due and payable, take possession of the cars and sell them under the mortgage. On April 19, 1926, Luckenbill sent a notice to the Illinois Refining Company and the Kawfield Oil Company, stating that he would take possession of the cars and sell the same on May 15, 1926, at the front door of the Granville State Bank, in Granville, Putnam county, Illinois. On May 14, 1926, the bill in this case was filed to restrain the sale, alleging that the contract was void and that there was no default in the payments. A summons was served on the same day upon Welch and on the next day on Luckenbill. The sale was nevertheless held as specified in the notice and the cars were purchased by the General American Tank Car Corporation for $32,075. Attorneys representing the Illinois Refining Company were present at the sale and made some statements

with reference to a suit having been filed to enjoin the sale. Knowledge of this fact came to the purchaser before any money was paid. It is claimed that at the time the sale was made there was only one car in Putnam county.

There was some controversy between the parties with reference to whether the instrument securing the loan was in legal effect a chattel mortgage. The decree found that it was an equitable lien in the nature of a chattel mortgage. Counsel on both sides practically acquiesced in that finding and it will be so considered for the purposes of this case. If the instrument was a chattel mortgage the statute with reference to chattel mortgages is applicable unless there is something in the record to take the case out of the operation of the statute.

Paragraph 27 of chapter 95 of our statutes is as follows: "That all sales of personal property under the power of sale contained in any chattel mortgage, shall be made in the county where the mortgagor resides, or where the property is situated when mortgaged. If there are more than one mortgagor, then in the county where the mortgagor in possession of the property resides at the time of taking possession by the mortgagee," etc. (Smith's Stat. 1929, p. 1942.)

There were two mortgagors in this case, neither of which had possession of the property at the time the mortgage was executed. The property was not within the State of Illinois at the time the mortgage was executed. We do not agree with the contention of defendants in error that the provisions of the statute are not applicable to the facts here presented. It is the purpose and intent of this statute that sales of personal property under chattel mortgages shall take place at some definite place where the mortgagor resides or where the property is situated when mortgaged, or, if there are more than one mortgagor, then in the county where the mortgagor in possession resides at the time of taking possession by the mortgagee. If there are more than one mortgagor and both or all of them live in the same

county, it is the purpose and intent of the statute that the sale shall be made in the county where both or all reside. To hold that where there are two mortgagors this provision of the statute does not apply but that it is only applicable where there is but one mortgagor is in direct conflict with the purpose and intent of the statute. In this case the place of residence of both mortgagors was in Rock Island county, and the sale should have been held in that county. The decree found that the Kawfield Oil Company did not have, and never had, any interest in the cars or the use thereof or the revenue therefrom. This finding is not controverted. If this finding is true there was but one actual mortgagor and the sale should have been had where that mortgagor resided. There is no question of waiver or estoppel on the part of plaintiff in error. When it was apprised of the proposed sale it served notice on both Welch and the lessor not to go ahead with the sale, and it filed a bill for an injunction. The fact that rights of creditors or third parties were not involved is immaterial, for the statute is plainly for the benefit of the mortgagor and it was the duty of the mortgagee to comply with that statute. A power must be exercised strictly in accordance with the grant, and the grantor of the power is a proper person to complain if that is not done. (*Waite* v. *Dennison,* 51 Ill. 319.) It is not the law that the grantor of the power cannot be heard to complain of its irregular exercise without at the same time showing a financial injury.

The sale was not only not made as provided by the statute but it was not made in accordance with the provisions of the mortgage. Article 4 of the contract of leasing provides that in case of default the lessor may forthwith, without notice, declare all of the notes due and payable, and, by his agents or otherwise, may take possession of the property, withdraw the same from the possession of the lessees and sell the same at either public or private sale. Article 5 provides that the lessor, instead of taking possession by

himself or his agent, may file a bill in chancery in any court of competent jurisdiction to foreclose the mortgage. The lessor did not take possession until after the sale was made and did not file a bill to foreclose the mortgage. In making the sale he did not comply with either the statute or the mortgage. All of the parties to the instrument were residents of Illinois. The instrument has been construed as a chattel mortgage and it is governed by the laws of Illinois. The fact that the property was, after the execution of the mortgage, used in interstate commerce does not remove the property from the operation of the statute with reference to the place of sale in case of default. The sale was not made in accordance with the statute and the instrument creating the mortgage, and the decree properly so found.

The next question is whether or not the payments on the chattel mortgage were in default at the time it was foreclosed. Plaintiff in error insists that they were not in default for the reason that the earnings of the cars were to be applied in payment of principal and interest of the mortgage. This was not done, and if it had been done there would have been no default. The evidence shows that before the chattel mortgage was executed there was certain correspondence between the officers of these various corporations with reference to pledging the earnings of the cars in payment of the principal and interest on the mortgage, but the mortgage makes no provision for such payment. The written mortgage superseded all negotiations leading to its execution, (*Wolf* v. *Lawrence,* 276 Ill. 11; *Lane* v. *Allen,* 162 id. 426;) therefore the earnings were not pledged to the payment of the mortgage. The evidence shows that after the mortgage was executed the Illinois Refining Company became indebted to Frank P. Welch in the sum of $4500 for money which he had advanced to it, which money was subsequently re-paid, and it later became indebted to him in the sum of $8000. For some time after the mortgage was executed the earnings of the cars were applied to the

payment of principal and interest thereon, but after plaintiff in error became further indebted to Welch he applied the earnings of the cars to the payment of his unsecured indebtedness. Where a debtor at the time of making a payment fails to direct its application the creditor may apply it as he pleases upon the different debts due him. Where neither the debtor nor creditor makes such application of a payment the law will apply it first to the debt for which security is most precarious. (*Wilhelm* v. *Schmidt,* 84 Ill. 183.) Welch had the right to apply these payments to the unsecured indebtedness due him, therefore the payments due on the chattel mortgage were in default and a right of foreclosure existed.

The prayer of the bill is that the notes in the sum of $28,000, and the mortgage, shall be surrendered and canceled. Plaintiff in error is not entitled to this relief. The evidence shows that the mortgage was *bona fide.* It was executed for the benefit of the plaintiff in error, and the money derived therefrom was used in payment of *bona fide* debts of the plaintiff in error. Without paying the balance due, plaintiff in error would not be entitled to have the mortgage and notes surrendered and canceled. *Rigdon* v. *Walcott,* 141 Ill. 649; *Dunbar* v. *American Telephone Co.* 224 id. 9; *Babcock* v. *Farwell,* 245 id. 14.

For the errors indicated the judgment is reversed and the cause remanded to the circuit court, with directions to enter a decree setting aside the sale on the ground that it was not conducted as provided by statute and the conditions stated in the chattel mortgage.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.
*Reversed and remanded, with directions.*