O. KLEB *et al.*, d/b/a Kleb, Shelp & Associates, Plaintiffs and Counterdefendants-Appellees, *v.* HENRY R. WENDLING, Defendant and Counterplaintiff-Appellant.

Second District   No. 77-559

Opinion filed December 1, 1978.—Modified on rehearing February 14, 1979.

Peter J. Wilson, Jr., and John P. Duggan, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellant.

Ralph C. Putnam, Jr., and E. J. McWethy, both of Alschuler, Putnam, McWethy & Weiss, of Aurora, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

Oscar Kleb and Robert Shelp, hereinafter K & S, brought an action to recover monies allegedly due them under the theory of account stated. That account arose from their design of a commercial structure for Henry Wendling. In his answer to their complaint, Wendling denied liability for any fees or expenses. He also filed a counterclaim against K & S for damages arising from alleged design defects and for the failure of K & S to properly supervise the construction of his building. K & S admitted in their original answer to the counterclaim that they had designed the structure and had supervised a portion of its construction, but they denied any design defects or any supervisory liability. Subsequently, Wendling amended his counterclaim to specifically allege that K & S violated its contract with him by failing to design and supervise the construction of

the building according to the plans and specifications so it would be suitable for its intended use. K & S then filed an amended answer denying it supervised the construction.

At a bench trial testimony was first offered to prove the account stated claim of K & S in the amount of $7859.48. At the close of that testimony Wendling's attorney attacked the sufficiency of the account stated and moved for summary judgment. The trial court reserved its ruling on this matter until the close of the entire trial. After further proceedings which we will concern ourselves with later, the court entered judgment for K & S on its claim, and against Wendling on his counterclaim. Wendling has appealed from the entire judgment. However, none of the issues raised by him on appeal is concerned with the account stated, the underlying contract, the additional fees charged by K & S, or any other aspect of the original claim. Accordingly, we have no choice but to summarily affirm that portion of the trial court's order entering judgment for K & S for $7859.48, as all possible error therein has been waived. See *Abundio Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.

We now turn to the two issues arising from Wendling's counterclaim against K & S. The first of those issues is the evidentiary question of whether the trial court erred in refusing to allow into evidence, as an admission against interest by K & S, a statement contained in an unverified answer which was later withdrawn and superseded. The second issue is the broad question of whether the verdict entered in favor of K & S on the counterclaim was beyond the manifest weight of the evidence.

The law is firmly established that statements of a party contained in an unverified pleading, which is superseded by subsequent pleadings, may nonetheless be admitted into evidence as admissions against interest. The facts contained in such unverified, superseded pleadings are competent evidence which may be considered, although they are not stipulations which have the effect of withdrawing a fact from issue by dispensing wholly with the need for proof of that fact. (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749; *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 183 N.E.2d 547.) Therefore, the refusal of the trial court to admit into evidence the original answer filed by K & S was in error. The admission of K & S that they had "supervised a portion of the construction until counterplaintiff breached their agreement and refused to pay subcontractors" in their withdrawn answer should have been admitted into evidence and considered in conjunction with all the other evidence introduced by the parties.

Bearing in mind the admission against interest discussed above, we turn now to what has proved to be the most complex issue before us,

namely, whether the trial court's verdict on the counterclaim is beyond the manifest weight of the evidence. In that counterclaim two separate breaches of contractural duty were alleged. First, it was alleged that the design developed by K & S for the building was defective. Second, it was alleged that K & S failed to supervise the construction of the building as they had agreed to do.

In its judgment memorandum the trial court held that no evidence of defective design was introduced and, therefore, no decision on that claim was necessary. After a careful examination of the testimony contained in the record we hold that finding to be erroneous. It is undisputed that K & S was retained by Wendling to create an original design for a structure with a specified use, to be erected upon a specific plot of land. It is also undisputed that the design originally created by K & S called for the excavation of a hole in excess of 11 feet to accommodate the structure's basement. The excavation work could not be completed because bedrock was discovered approximately 8 feet below the surface of the site. As a result, construction was delayed at least three months and the basement's height was reduced from 11 feet to 8 feet, creating other construction problems. The record is clear that K & S never requested that Wendling provide them with test borings of the site prior to the completion of the design, nor did they perform any borings themselves. However, we note that K & S did make other soil tests upon the site. Apparently K & S performed its design function without knowledge of the actual subsurface composition. We are of the opinion that a just disposition of this matter requires that both sides submit additional evidence as to whether K & S, as a reasonably competent architect, should have obtained subsurface borings before completing its design. If Wendling can establish negligence by K & S in this regard, he should then be allowed to prove up proximate damages of such conduct, if any. Therefore, we reverse the judgment of the trial court as to the initial allegation of the counterclaim and remand it to the trial court for rehearing.

We are now faced with the question of whether the trial court's dismissal of the second part of Wendling's counterclaim, alleging the failure of the architects K & S to supervise the construction was beyond the manifest weight of the evidence. In reviewing that issue we note that the trial court listed 11 factors which it considered "important" to the determination of the question of whether the oral contract included supervision of the construction of the building. We have carefully examined those factors, as well as the record from which they are drawn. We find that, for the most part, those factors are irrelevant or immaterial to the issue at hand. Therefore, we will not list them here. The controlling question is whether K & S specifically contracted with Wendling to

superintend the construction of the building and then failed to do so.

■■■ From our review of the record we find that the following facts are determinative. First, we note that in his testimony architect Kleb stated that he used the term "administer the contract" when he originally discussed the design contract with Wendling. From Kleb's testimony it is clear that his use of the term "administer" was the functional equivalent of "supervise", which architects had previously used. Kleb specifically stated that his role did not change whether he was "supervising" or "administering" a contract and that the change in jargon was to avoid liability under the Structural Work Act. We also note that in this case Kleb told Wendling that he would keep a closer tab on the general contractor than he normally would because he doubted the general contractor's competence. It was admitted by Kleb that he had an employee who visited the site daily while he himself visited the site at least two times a month. Kleb also knew that Wendling was in Wyoming while the construction was in progress. On the basis of the evidence, as well as upon the admission against interest noted above, we find that K & S undertook, by oral contract with Wendling, to superintend the actual construction of the building. Having made this finding, we note that the law in Illinois is well settled. It is the architect's duty, when superintending or overseeing the construction of a building, to prevent gross carelessness or imperfect construction. Mere detection of defective workmanship does not relieve him of a duty to prevent it. *Lotholz v. Fiedler* (1895), 59 Ill. App. 379.

Wendling alleged that many defects resulted from the failure of K & S to properly administer the construction. However, a question of fact remains as to which of those defects, if any, could have been prevented by a vigilant K & S. In addition, it must be determined what damage, if any, those defects caused Wendling.

Accordingly, we reverse that portion of the trial court's judgment dealing with Wendling's counterclaim and remand it for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded with instructions.

SEIDENFELD, P. J., and WOODWARD, J., concur.