In re CALIFORNIA STEEL
COMPANY, Debtor.

CALIFORNIA STEEL COMPANY,
Plaintiff,

v.

J. Steve DODDS, d/b/a Dodds
Engineering, Defendant,

Bankruptcy No. 80 B 05145.
Adv. No. 80 A 2062.

United States Bankruptcy Court,
N. D. Illinois, E. D.

July 8, 1982.

Leonard Schanfield, Mark S. Lieberman, Ross P. Benjamin, Mary T. Fahey, Rosenthal & Schanfield, Chicago, Ill., for plaintiff.

Mathew J. Iverson, Abramson & Fox, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action involves a complaint by California Steel Company (hereinafter referred to as debtor) to avoid a mechanic's lien claim made by J. Steve Dodds, d/b/a Dodds Engineering (hereinafter referred to as Dodds).

Prior to the institution of its Chapter 11 proceeding, the debtor was in the business of operating a steel plant, part of which was devoted to the operation of a steel rolling mill.[1] In 1978, the debtor began a rolling mill modernization project.[2] As part of this project, Dodds and the debtor entered into a contract in December of 1978, pursuant to which Dodds agreed to perform engineering services. Specifically, Dodds agreed to undertake the design, engineering, and detailed layout of the electrical

---

1. A steel rolling mill is a fluctuating set of mill stands run by a motor which produce steel bars from billets. The billets pass on a conveyor system through the rolling mill stands. As it passes through each mill stand, the billet is made thinner and longer. Once the desired width has been achieved through the rolling process, the newly formed bars are cut and placed on a cooling bed.

The debtor used from six to fourteen mill stands to produce its steel bars, depending on the required thickness of the bars. The debtor's rolling mill operation was approximately 400 feet long and 40 feet wide and weighed about 1500 tons.

2. The entire modernization project was expected to cost approximately $2,000,000.00.

system to be incorporated in the steel rolling mill.

As part of his obligation under the contract, Dodds designed an electrical system in which wiring was run through conduit located in the concrete floor, through trenches cut in the concrete floor, and through additional conduit attached to the walls of the factory structure. The system utilized conduit already installed in order to reduce installation expense. The electrical system linked the debtor's entire mill operation, consisting of fourteen mill stands, to two control centers. Where necessary, the wiring was fastened in place with screws.

Dodds completed his on site engineering services on August 28, 1979. In addition, Dodds completed certain contractually required as-build prints[3] on February 22, 1980. The debtor acknowledges that the work performed by Dodds was done in a timely and satisfactory manner.

On April 28, 1980, the debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. On June 23, 1980, Dodds filed and recorded a claim for a mechanic's lien in Cook County, Illinois. Dodds also filed a proof of claim in the debtor's bankruptcy proceeding, asserting a secured claim in the amount of $25,786.00 based upon the alleged mechanic's lien arising from his engineering services.

Subsequently, the debtor filed a complaint to invalidate Dodds secured claim on the basis that the claim was unenforceable as a mechanic's lien under Illinois law. As a result, this court must decide: (1) whether, under Illinois law, Dodds is entitled to a mechanic's lien for his services as a professional engineer with regard to the aforementioned electrical system, and (2) whether Dodds properly perfected his purported mechanic's lien.

■ The Illinois Mechanic's Liens Act (hereinafter referred to as the Act) provides:

Any person who shall by any contract or contracts, . . . with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land, furnish material, fixtures, apparatus or machinery, . . . or perform any service as an architect, structural engineer, professional engineer or land surveyor in, for or on a lot or tract of land for any such purpose; . . . is known under this Act as a contractor, and has a lien upon the whole of such lot or tract of land . . . This lien extends to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which the owner may have in the lot or tract of land at the time of making such contract or may subsequently acquire . . .

Ill.Rev.Stat. ch 82, § 1 (1979). Consequently, there are two requirements for an enforceable mechanic's lien: (1) the party negotiating with the contractor must have the authority to contract, and (2) the contract must be to improve the land, furnish materials or machinery, or perform certain services.

■ In the case at bar, the real estate upon which the debtor has built its steel rolling mill is owned by the Chicago Metropolitan Sanitary District. The debtor is the sublessee of California Auto Reclamation Company, who in turn is the successor to the original lessee of the property, the Hansell-Elcock Company. Under the debtor's lease with California Auto Reclamation Company, the debtor has the right to have improvements constructed on the leased premises. In addition, the debtor throughout this controversy has never claimed that it lacked the authority to contract for the construction of improvements or the performance of services qualifying under the Act. Accordingly, this court finds that the debtor had the authority to contract with

---

3. The as-built prints were final drawings of the electrical system as installed. The function of these prints was to record the actual interconnection between all electrical devices. Thus, the prints are used for maintenance purposes.

Dodds produced approximately 90 as-built prints. At trial, evidence was introduced indicating that only a portion of these prints were actually created by Dodds, the balance being modifications of drawings already in existence.

any person to improve the leased premises or to perform any service enumerated under the Act.

■ Professional engineering services is one of the services which qualifies for a mechanic's lien under the Act. Moreover, the Act has been construed to allow the lien upon the mere performance of the qualifying services, regardless of whether the services improved or came in contact with the land. *See, e.g., Freeman v. Rinaker,* 185 Ill. 172, 175–176, 56 N.E. 1055, 1056–57 (1900) (mechanic's lien allowed for the services of an architect even though the building was never constructed); *Butler v. Metz, Train, Olson & Youngren,* 62 Ill.App.3d 424, 432–33, 20 Ill.Dec. 187, 93–94, 379 N.E.2d 1255, 1261–62 (1978) (architect has a legal right to file a mechanic's lien for his services). Since the debtor had the authority to contract for services enumerated under the Act and did in fact contract for Dodds' services as a professional engineer, and since Dodds performed these services in a satisfactory manner, this court holds that by operation of the Illinois Mechanics' Liens Act, Dodds is entitled to "a lien upon the whole of such lot or tract of land."

■ The Illinois statute also provides that this lien may be extended to an estate for years. *See also, Hacken v. Isenberg,* 288 Ill. 589, 594, 124 N.E. 306, 308 (1919) (the words "the owner" in section 1 of the Mechanics' Liens Act refers to anyone having an estate in fee, for life, for years, or for any other interest); *Chicago Smokeless Fuel Gas Co. v. Lyman,* 62 Ill.App. 538, 539 (1895) (mechanic's lien may be asserted against a leasehold interest). Accordingly, this court holds that Dodds may enforce his lien against the debtor's leasehold interest. Moreover, the terms of the debtor's lease also support the application of Dodds' lien against the debtor's leasehold interest, by requiring the debtor to be liable for any mechanic's lien filed against the leased premises arising from activities authorized by the debtor.

■ The debtor, however, argues that the work performed by Dodds does not qualify as a mechanic's lien because it was performed upon a chattel (i.e., the steel rolling mill stands), not upon real estate.[4] Accordingly, the debtor has attempted to demonstrate that its mill stands constitute nonlienable trade fixtures rather than permanent fixtures. This argument fails for two reasons.

■ First, by alleging that the mill stands are trade fixtures, the debtor has mischaracterized the issue involved in this case. The starting point in the analysis of whether a mechanic's lien attaches should be whether *the work performed by the contractor* (i.e., the professional engineering services with regard to the electrical system) qualifies under the Act. If the work performed by the contractor comports with the statutory requirements for a mechanic's lien, it is irrelevant whether such work in someway involves or comes in contact with a trade fixture.

■ Second, even if the service nature of Dodds contractual obligations is ignored, Dodds is still entitled to a mechanic's lien if the electrical system (as opposed to the mill stands) constitutes a permanent fixture. Generally, the courts have used three factors to distinguish permanent fixtures from trade fixtures: (1) the means by which the fixture has been attached to the realty, (2) whether the fixture is adapted to, and necessary for, the purposes to which the premises is devoted, and (3) whether the parties to the lease intended that the fixture become part of the realty. *Fehr Construction Co. v. Postl System of Health Building,* 288 Ill. 634, 124 N.E. 315 (1919); *B. Kreisman & Co. v. First Arlington Nat'l Bank,* 91 Ill. App.3d 847, 47 Ill.Dec. 757, 415 N.E.2d 1070 (1980); *Miller v. Reed,* 13 Ill.App.3d 1074, 302 N.E.2d 131 (1973).

In the case at bar, the first two requirements are clearly satisfied. The electrical

---

4. The mill stands were movable and were, in fact, dismantled and removed from the leased premises. The ability to be removed, however, does not conclusively establish that an item is a trade fixture. *See Dual Temp Installations v. Chicago Title and Trust,* 41 Ill.App.3d 415, 354 N.E.2d 131 (1976).

system was sufficiently annexed to the realty by running the wiring through conduit located in the concrete floor and affixing the wiring to the walls of the building with screws.[5] Since the electrical system was an integral and indispensable part of the steel mill operation, it was adapted to the purpose for which the leased premises was used. *See Miller v. Reed,* 13 Ill.App.3d 1074, 1078, 302 N.E.2d 131, 134 (1973) (electrical wiring system held to be a permanent fixture); *Babiak v. Strum,* 20 Ill.App.2d 191, 155 N.E.2d 332 (1959) (abstract opinion) (wiring system was a lienable improvement).

As to the third factor, the debtor argues that it had no intent for any improvement to become part of the realty since the terms of its lease specifically provided that the debtor is to retain title to improvements. Generally, the parties' intent as to whether a fixture is to become part of the realty is the most important factor to be considered when attempting to assert a lien against a landlord or the owner of a fee simple. *B. Kreisman & Co., supra,* 91 Ill.App.3d at 852, 47 Ill.Dec. at 761, 415 N.E.2d at 1074. However, when attempting to assert a lien against a lessee's leasehold interest, the more appropriate inquiry would be whether the work performed by the contractor benefitted the leasehold interest. *Chicago Smokeless Fuel Gas Co. v. Ryman,* 62 Ill.App. 538 (1896) (mechanic's lien can be placed on leasehold interest if the improvements add to the value of the leasehold). Since the electrical system in controversy herein was necessary and vital for the efficient operation of the debtor's steel mill, this court finds that the electrical system increased the value of the debtor's leasehold interest. Consequently, this court holds that the electrical wiring system installed by Dodds constitutes a permanent fixture.

The second issue to be decided is whether Dodds properly perfected his mechanic's lien. Under the Illinois Mechanics' Liens Act, a contractor has an enforceable mechanic's lien if:

within 4 months after completion, or additional work is done or material is delivered therefor within 4 months after the completion of such extra or additional work or the final delivery of such extra or additional material, he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of deeds of the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien . . .

Ill.Rev.Stat. ch 82, § 7 (1979)

Dodds completed the on site engineering services on August 28, 1979, but he did not finish and submit the contractually required as-built prints until February 22, 1980. Thereafter, Dodds filed and recorded his claim for a mechanic's lien on June 23, 1980. Consequently, if the four month limitations period begins to run as of February 22, 1980, Dodds claim was timely filed under Section 7 of the Act.[6]

The courts in Illinois have held that the four month limitations period starts to run upon the completion of the contractually required work. *Capital Plumbing & Heating Supply Co. v. Snyder,* 2 Ill.App.3d 660, 275 N.E.2d 663 (1971) (four month limitations period began to run after the installation of the last railing and the painting of other railings previously installed as required by contract). However, where the work completed is merely a repair to, or maintenance of, work already performed, the time for filing a claim for a mechanic's lien is not extended. *Broughton & Sons v. Muller & Allen Realty,* 40 Ill.App.3d 776, 780, 353 N.E.2d 30, 32–33 (1976) (repair to spillway did not extend time for filing); *Miller Bros. Industrial Sheet Metal Corp. v. LaSalle National Bank,* 119 Ill.App.2d 23, 30, 255 N.E.2d 755, 759 (1969) (resetting

---

5. A further indication that the electrical system was affixed to the realty is that the electrical system was severely damaged upon removal of the mill stands.

6. June 22, 1980 was a Sunday. Therefore, the deadline for filing is extended to the next business day. Ill.Rev.Stat. ch. 1, § 1012 (1979).

gasket material that had worked loose from lights constituted a repair rather than the completion of the contract itself).

Since the as-built prints were a necessary and required condition in the contract between Dodds and the debtor, this court holds that the four month limitations period began to run on February 22, 1980 when Dodds finished and submitted the prints. Consequently, the debtor's complaint to avoid Dodds' secured claim on the basis that it was an unenforceable mechanic's lien under Illinois law is denied.

Dodds is to furnish a draft order in accordance with this opinion within five days.*

---

* This decision is entered in compliance with the stay of enforcement until October 4, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Mara-* *thon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).